Good morning, your honors. My name is Mike Close. I'm here for the appellants, joined by my co-counsel Jack Silver. Today we're here to talk about the Endangered Species Act, the purpose of which is to protect listed endangered species, including the Sevastopol meadow foam. And we're here today to make sure that the plain meaning of Section 982B of the statute is implemented to achieve that purpose. The section and the key language that we're dealing with states that it's unlawful for any person subject to the jurisdiction of the United States to, Section B says, remove and reduce to possession any such listed plant species from areas under federal jurisdiction. And that's the key phrase before the court. And specifically whether that phrase includes waters of the United States, as whether that's an area under federal jurisdiction. The waters at issue here are in Sevastopol. They are a wetland area on private property that the United States Corps of Engineers has already delineated as wetlands under the Clean Water Act. Are you arguing that the removal took place after it had been delineated as wetlands by the Army Corps of Engineers? Yes, we are, your honor. Is that critical to your argument? What if it could be designated but isn't yet? It was delineated as wetlands. An application for a dredge and fill permit under the Clean Water Act was submitted by the applicant. In terms of the court's ruling at the district court, we don't need to reach that issue. I don't think there is much of a factual dispute at all there. Well, the reason for my question is the word jurisdiction is, of course, protean. I'll say it that way, not protein, but protean. It can mean many things in many contexts. And as soon as we move past the definition that the government wants, which is to say that means federal land, and we're talking about the ability of the federal government to assert jurisdiction over land, I don't know where we stop. That's my problem with your reading. So where do we stop? Theoretically, the federal government has regulatory jurisdiction over pretty much every piece of land in the United States. It hasn't necessarily asserted it yet, but it has regulatory jurisdiction in the sense that it could. Yes, I mean, the statute doesn't, of course, just say jurisdiction. It focuses on areas under federal jurisdiction. We're also dealing with plants. In terms of waters of the United States, these are very specific areas that don't require any kind of action on behalf of an individual. In the Fairbanks case of last year, I believe, the court made a decision there where there was a challenge to a delineation. The court said it wasn't right. But in doing so, the court made clear that whether an area, quote, is a jurisdictional wetland, i.e., contains waters of the United States, depends on its vegetation, soil, and hydrology, the land is what and where it is. So whether or not someone's proposing to do something or triggering some kind of permit requirement, the waters of the United States as they exist today, as they existed in 1972, which this area presumably did, those have always been waters since that date and continue to be waters no matter what the owner proposes to do. They're waters of the United States. What if I have some kind of swampy land somewhere and I have no idea whether it really is wetlands within the definition of the federal statute? What do I do? Am I constrained by the ESA or not? Well, the Endangered Species Act would be focused, of course, on whether there's any listed animals or plants within that wetland. So if you are unaware... I've got some swampy land and I've got some of this particular plant here on my land. Am I constrained or not? If you know the plant's there? If I know the plant's there but I don't know whether it's wetland, all I know is that I've got some kind of, you know, it's boggy. Well, normally under the Clean Water Act, you have an opportunity through the Coors process to ask for delineation to find out because if you go ahead and dredge and fill without a permit on the hope that you're not dealing with wetlands, then you might get into trouble. I'm not interested in dredging and filling, but I want to just get rid of this darn plant. And I have no authoritative determination at this point whether or not it is wetlands within the federal statute. The Act doesn't limit any incidental take of the plant. The Act is... What I'm asking you is, does Section 9 apply to me in that circumstance when it has not yet been designated as wetland? But I think it might be if I were to ask. Well, I think it does apply. If it turns out it is the waters of the United States, and certainly that's an area under federal jurisdiction, you would not be bound by any kind of take prohibition. That doesn't apply to plants under the Endangered Species Act. So you can still incidentally take the plant. But your answer is, even though it's not yet been designated as wetland, I nonetheless am constrained by the Endangered Species Act. I can't just dig up the plant and throw it in the garbage. Yeah, I think if you have... Now is the answer yes or no? Yes. I think in the case that if you have waters on your property, a wetland area that you think might be a wetland but you're not entirely sure, I think Section 9 would apply. But it would be contingent in terms of areas under federal jurisdiction on whether it turns out it was wetland. What if I'm a mining company, and I have the ability to mine provided that I produce and then get approved by the Bureau of... I think it will be the Department of Interior, some part of it. Yes. I need to get an approved mining plan of operation. But I have not yet done so. Is that land under federal jurisdiction under your reading of the statute? If you do have to get approval from the secretary and they have authority over it... To mine. I would say yes. There are provisions in SMCRA which give exclusive jurisdiction to states, so whether that would change that dynamic, I'm not sure off the top. So under your reading of the ESA, anybody who has a mining claim and for whom... before they can go forward with their mining, they can't dig up the endangered plants on their property. If they know that they're actually listed and it's an intentional kind of action to maliciously destroy them, yes, it would apply. It's covered by the section. And mind you, you can also remove, and it's not just removal, it's removal and reduce to possession, which doesn't preclude everything as well. You have to have that intent. I'm much more interested in the question of whether Section 9 covers rather than what Section 9 requires once it covers. And for the mining areas, I mean, just in terms of the makeup of the Act, where in that context you'd also have your Section 7 consultation where the federal agency would have to go to Fish and Wildlife Service and consult with that agency about impacts on the listed plants or whatever animals might be there under the Act. And the notion that Section 9 somehow wouldn't cover the same areas and you'd have a situation where that same entity, the same person, could go ahead and remove maliciously and with bad intent whatever they want to do, and the Section 7 consultation ends up being mooted on that plant, that seems quite inconsistent with the goals of the statute and the context that we find Section 7. So let me ask you a question. So if you were in my seat, you're writing the opinion for this case, or Judge Fletcher or Judge Nelson or all of us, how would you interpret, based on what you've just answered to Judge Fletcher, what is your interpretation of the words, what is it? Areas under federal jurisdiction. Under federal jurisdiction. It includes just what it says. Yeah, why don't you tell me, I want you to tell me. This is how the court should interpret. What are the words that you would use? How's your chance? It would include those kinds of areas that themselves are subject to federal jurisdiction. Those kinds of areas that are? That are subject to federal jurisdiction and require some kind of. . . So what does subject to jurisdiction mean? Well, we know it's not just federal lands, even the Fish and Wildlife Service. It's just not federal lands. What else does it mean? It would include certainly waters of the United States as areas under federal jurisdiction. And those kinds of areas that exist based on whatever their physical properties are. So it means those kinds of areas that are subject to the Clean Water Act? Well, in the case of waters of the United States, again, it doesn't require any action by anybody for an area to be a water of the United States. They are what they are, as the Ninth Circuit has told us. So for that specific example, and that's all we have in this case. So look, you're asking the court to give this an interpretation. I want you to. . . The frame would be any areas over which the federal agency or the federal government exercises jurisdiction as an area. Something in terms of the area. I also think it would extend to regulatory actions where the land itself is being regulated. So I think the Mining Act is certainly a good example. Now, whether you can figure out any kind of rationale. So you would say it means any land where the federal government is asserting some sort of regulatory authority? Over the area, yes. That's what I mean, over the area. Yes. Okay, now where does that come from? Areas under federal jurisdiction. No, no, no, no. Is that reflected in the statutory history of this provision? It's just with the phrase that Congress chose to use in the statute, areas under federal jurisdiction. Is there a case that supports that? There is one case, including our own as well. But the one case in Oregon, which is the Oregon Natural Resources District Court case, where the court plainly decided that the language extended, and I can quote from it, extended to private lands that or didn't extend to private lands that do not enter into interstate or foreign commerce and do not require any federal authorization. That's the best case? That's the only case that's had an opportunity to address this language. There's not a lot of Section 9 cases, period, out there. It's not a very common statute to see enforced. And we know from our own court in its initial summary judgment ruling that at the time, the judge clearly thought that this is not limited to federal lands. It's something, but it's not limited to federal lands. Fish and Wildlife Service, in their own brief, agrees that it's not limited to federal lands. Well, I'm going to have the same questions for them, because I'm not sure I understand their interpretation either. They agree that it extends, for example, to state-owned riverbeds that flow past a refuge. So clearly, if the legislative history had any import, which we don't think it's necessary to even go there, the fact that it mentions federal land, even Fish and Wildlife agrees that it doesn't extend that far. So the government says that we owe them deference, Chevron deference. They point to these manuals, and they point to some designations and whatnot, and they say, ah, we've always referred to this as federal lands. But they don't really use federal lands as their definition either. Correct. What do you say about that? Well, I don't think... Where does Chevron fit into this analysis? Well, we don't think Chevron fits in at all. We think the language says what it says. It may be broad, but it's not ambiguous. Well, under Step 1 of Chevron, if you give them any kind of recognition, you'd say under Step 1 of Chevron, the statute is so clear, Judge, that it means any areas under federal regulatory authority. Right. And none of the legislative history states any kind of express congressional intent. To the contrary, they say an example, which is how the Fish and Wildlife Service treats it as an example because state-owned riverbeds are not federally owned. And I'd also point out to the Court that one regulation that might be due some deference was in 1985 that implemented Section 982B. This is 50 CFR 17.61. And there, in that regulation implementing the statute, one, the language implements only the first prong because it was 1985. We didn't have the second and third prongs yet. And they used the exact same language. They extended to the removal prescription to areas under federal jurisdiction. And also notably in there, and I think this is if there's any kind of deference for the service, this would be where it should go, they specifically address limited procedures for state conservation agency personnel to remove and reduce to possession any endangered plants in that regulation. They have a whole specific provision for how a state agency official could remove a plant. So why would you even be talking about state agency officials if areas under federal jurisdiction didn't in some instances extend into non-federal lands? And the easiest example is what we're dealing with, which is waters of the United States, which are waters because of their characteristics, not because of any activity by anyone. Those areas are federal jurisdiction as we speak, whether the Court has gotten there yet or not, though in this case we have a very clear delineation. Would you limit this case just to the unique circumstances of this case, dealing with the Clean Water Act and the Endangered Species Act? Well, certainly I think the Court would only have to reach whether or not waters of the United States are areas under federal jurisdiction, whether or not other particular situations which involve other complicated statutes like the Surface Mining Act, which has provisions for exclusive state jurisdiction, or the Coastal Zone Management Act, which is a grant-making statute. I'm not even sure that adds up to regulatory. Has the state done enough where the federal government would like to give them some money to help them do it? I don't even think that's regulatory. So I don't think throwing out a bunch of federal statute names actually raises any kind of absurdities or anything like that. Waters of the United States is the one area where I don't think there's any doubt that those are areas under federal jurisdiction. And I do notice my time is running out, but I would like to reserve some time. But if you have any more questions, that would be fine. Why don't we go to the other side, and we'll make sure to have you come back up again. Okay. Thank you very much. May it please the Court. Brad McLean for the United States as amicus curiae. With me are Michael Neville with the State of California and Chris Carr and Shea Dibley with Schellinger's, the appellees in this case. I will take half of the time allotted to appellees, and Mr. Carr will follow. First, I'd like to clarify the United States' position. The phrase areas under federal jurisdiction means federal land. However, the government reads federal land very broadly. An example is in many of the recovery plans for listed plants and in the Endangered Species Act itself, one of the ways that the service can conserve a listed plant is to purchase a conservation easement from a person who owns land where the species occurs. So that landowner, after selling the government or donating even an easement to the government, harmed that plant, that would be an area under federal jurisdiction. But if you explain the reference, again, I confess I need a little help on this one. Can you explain the reference that your opposing counsel just made to state-owned riverbeds? Yes. Do you agree that, in fact, under federal jurisdiction extends to that as well? Not necessarily, Your Honor. The ---- Well, where's that coming from, then? Why is he saying that? We dropped a footnote in the brief which is intended to essentially serve as a placeholder because ---- And where's that footnote? I want to make sure I read it. So. He's holding out a piece of paper for you. It's on page 14. Thank you, Your Honor. Footnote 3. So the phrase areas under federal jurisdiction is ambiguous. And because it is ambiguous, it represents a gap in the statute that is a delegation of authority to the agency. The agency has never defined the outer boundaries of how far that statute could be read. And in that footnote, the thought was in the Canfield case in 1897, the Supreme Court upheld the Unlawful Enclosures Act where, as an exercise under the property clause, the federal government said we can regulate enclosures on private land adjacent to a national park as a function of protecting federal land. So the property clause is broad. And theoretically, where you have a state or even a nature conservancy parcel next to a national park and you have a population of plants and someone comes out and harms those plants on that land, the government could arguably prosecute that person under either the first or the third problem. You might have had this example in mind as you were just saying what you said, but I want to make sure. What about an inholder in a national park? You know, we get those from time to time. The national park shows up, but there's some people out there. And so you've got various parcels of private property entirely inside the national park. Is that under federal jurisdiction under your reading? Not necessarily. I would put that in the placeholder. The United States has – How can you say not necessarily? We're trying to get a rule here, and you're just saying maybe. The government has never defined the outer boundaries, unfortunately, of how far areas under federal jurisdiction could be read. Clearly the answer is yes. If the federal government owns an interest in land, a lease – That's not what I'm asking. I'm asking about a privately held inholding entirely within the boundaries of the national park. That is not covered under the agency's current construction, but if the agency were to broaden the reading of the statute in the future, that would be reasonable. What happens if the Congress passes a statute that says, okay, we've now got sort of special management rules for inholdings within national parks? And now under these management rules, we declare that the ESA applies as – And they don't otherwise purchase anything. They don't condemn anything. They merely say ESA now applies under Section 9. The agency has not done that, but that would be a reasonable exercise of the agency's authority. And you would say that then is under federal jurisdiction? Yes, Your Honor, we would. Well, if that's all true, why is it not under federal jurisdiction when it is, quote, the waters of the United States? That's a fairly unambiguous phrase given the statute. Your Honor, that is an example of regulatory jurisdiction. Well, it sounds as though management area is also regulatory jurisdiction because my hypothesis was no change of ownership. My hypothesis was only that they passed a statute saying all inholdings within the national park are now subject to Section 9, and the inholdings will now be deemed under federal jurisdiction within the meaning of ESA. Your Honor, that sounds like regulatory jurisdiction to me. Sure. Sure. That would be the agency taking a step that it has not taken, though. Here, the Northern California River Watch is asking this Court to read a prohibition into the statute that has never been expressed by the agency in any context in any form. My problem is once you move beyond the narrow, clean version, federal land means some form of traditional ownership, fee, simple, leasehold, easement, but you move into management area that looks more like regulatory jurisdiction, as soon as you start doing that, you're outside of property ownership. You're into regulation. And once you've done that, I don't know how you stop. I agree, Your Honor, and that is something that the agency could theoretically do. I come back to the fact that the agency has not done so. In the Habitat Conservation Why hasn't Congress done so under the Clean Water Act by declaring, okay, this is what happens under the Clean Water Act. It is waters of the United States, and we're regulating, and so on. It's helpful to look to the history. In 1973, the only restrictions on plants were import, export, or sale in interstate or foreign commerce. In 82, Congress added the prohibition on removing and reducing to possession, and the Contemporaneous House Conference Report equated that with federal lands. In 88, Congress again stepped in to fill a gap, because in the 1985 rules, the service explains that if you went out on a national park and you wanted to illegally dig up a plant and you saw the ranger coming along and you dropped it on the trail, you would perhaps not have effectively reduced it to possession. So there, Congress added the malicious damage or destruction prong. And again, in the Senate report, Congress quite clearly explained how that was limited to, in its view, federal land. Another part of the 1988 provision was this third prong on taking a plant in violation of state law. Effectively, what Congress did is apply broad protections for plants on federal land. We read that broadly to apply to any federal interest and left it to the States to go further with regard to private land. Scalia. You don't need to know any federal interest. You didn't know that. You're not saying that. You're saying federal land. You've got to know that. Roberts. I just want to ask you, I want to ask you the same question I asked counsel, which is, and I still don't understand how you would have the Court interpret this provision. I'm totally confused now. Your Honor, we would have the Court interpret the areas under federal jurisdiction to mean federal lands. Note that federal lands is construed broadly. And that's the end of it. So you'd want us to construe it to mean federal lands, but federal lands has a broad definition, the outer boundaries of which we do not know. Yes, Your Honor. That's how you want us to interpret it? Yes, Your Honor. Because the agency has not spoken to what the absolute extent, you know, the farthest flung reading of the statute possibly. Let me ask you this. What was wrong with the approach that the district court took? So he basically said, look, I don't have to decide what, you know, what this really means. I just know that it doesn't mean regulatory jurisdiction. What's wrong with that approach? That's a fine approach. The approach that the district court took was appropriate in that Judge Breyer looked to the tension between Section 7 and or Section 9 and 10, rather, and the legislative history and reached the right conclusion. I note that my time is up, so I'd like to allow Mr. Carr to speak. Thank you. Mr. Carr has been nervousing over there. Okay. We won't penalize you for your co-counsel's profitable use of time. Thank you, Your Honors. Your Honors, unlike the Federal Government, I'm not burdened by larger policy considerations. I simply represent the landowner, Schell and your brothers. No, I'm afraid you are, because you're trying to get us to interpret a statute, and so we have to think about these things. I can maybe say things the Federal Government can't. And in that regard, I would refer the Court to the government's footnote 3 on page 14 of its brief, where very clearly they limit the area beyond pure Federal lands that they're claiming the clause, areas under Federal jurisdiction applies to, to Federal property interests. And so... And special management areas. And special management areas. Maybe that's... That sounds like Clean Water Act. That's kind of a special form of Federal management. Some species of some special type of jurisdiction where you have really co-management going on, state and Federal interests combined, property state and Federal immediately adjacent to each other. Your Honor raised the enclave question. I think that's the type of situation that the Federal Government is trying to reserve to itself some sort of discretion on to, in the future, perhaps undertake rulemaking on. My view, Your Honor, is that the proper principle for delimiting the term areas under proprietary jurisdiction or ownership from regulatory... Yeah, I know that's a nice clean line that would help you a lot. But let me ask you this. Under Section 7, I think it is, there's a consultation requirement. So before the Army Corps of Engineers can issue a dredging or a fill permit, for example, on your own client's land, if there is an endangered species plant upon the land, and I ask you for purposes of the question to put to one side the possibility that this was imported by somebody else. I mean, that's not part of my question. That's off to one side. Yes, Your Honor. I think the Army Corps of Engineers is required to consult as to the fate of that plant if the permit is granted and perhaps even deny the permit under certain circumstances. Correct, Your Honor. Now, so what happens if before applying for the permit, I go out there and I find this beautiful but endangered plant. And I say, oh my goodness, this is going to cause trouble. And I dig it up. This is before I've applied for a permit. And it is waters of the United States in the sense that I think it's swampy land and probably going to be covered. Because if I don't apply for a permit and just start dredging, they're probably going to come out and get me. But before I apply for the permit, I want that darn plant out of there. And so I dig it up and I throw it away. And then I go out there and I find this beautiful but endangered plant. And I dig it up and I throw it away. And then I go out there and I find this beautiful but endangered plant. Am I allowed to do that? You are, Your Honor, unless that is prohibited by State law. In California, that would be prohibited. So in other words, I'm allowed entirely to defeat the purpose of the consultation requirement under Section 7. You are, Your Honor, save for the requirements of the third prong of Section 9A2B, which is the prong concerning private property. You cannot remove, destroy, damage a plant on private property in violation of any State law or any State criminal statute. As far as Federal law is concerned, I can be on a wetland. I can see an endangered, listed endangered species plant on my wetland. And before I apply to the Army Corps of Engineers, as far as your construction of the statute is concerned, I can dig it up, I can burn it, I can blow it up with dynamite. Yes, Your Honor, unless the State law prohibits that. Okay. Your Honors, that seems like an odd reading of Section 7. I mean, there's nothing left to consult because I destroyed the plant beforehand. Well, there is a lacuna there. The proper way I submit to approach this case is the way that Judge Breyer did. He didn't even get past Chevron Step 1. He looked at the statute, not simply the phrase. This one would be easier for you if you actually had an interpretation of this. I mean, if the agency said, listen, here's what we mean by. You've got all these kind of things off to the side. That's correct, Your Honor. But I submit we don't even need to get to Chevron Step 1, past Chevron Step 1, as Judge Breyer did. He didn't look at the narrow phrase, areas under Federal jurisdiction and stuff there. He said we need to look at the statute as a whole. And so he looked at the interaction of Section 7, the consultation process that Justice Breyer and I were on, or just inquired about, Section 9, the take prohibition for animals, no take prohibition for plants. Congress treated plants differently from animals, provided a lesser level of protection, and then Section 10, the incidental take permitting process. And Judge Breyer emphasized that it would create an absurd result to give to the phrase areas under Federal jurisdiction the meaning that appellant urges, because you have a situation there where the Fish and Wildlife Service has no authority to issue a Section 10 incidental take permit for plants, but it can issue a Section 10 incidental take permit for animals. And so taking that approach, looking at the statute as a whole, Judge Breyer concluded that areas under Federal jurisdiction has to mean Federal proprietary jurisdiction, Federal land, Federal ownership. To give it any other meaning, there's no principle to be derived from the statute, from case law, or from policy to limit the phrase area under Federal jurisdiction to the Clean Water Act. As appellants suggest, I can understand the intuitive appeal of what you're suggesting. It means there is some limit. It's not anything. It's not where the mining law applies. It's not, for instance, Judge Breyer raised an oral argument in the district court. He asked plaintiff's counsel, well, does this mean Alice Waters' garden in back of Chez Panisse restaurant over in Berkeley where they grow strawberries, if she happens to get an endangered plant spring up there, are they prohibited from taking that out of the flower box? Because the Counsel, let me ask a question, if you may. I'm sorry to interrupt. But you said that the key distinction is between proprietary and regulatory jurisdiction. But the statute itself makes no such distinction. So what is the basis for your interpretation? The basis for that interpretation is so that the statute as a whole, it's Section 7, 9, and 10 work, and it's also confirmed by the legislative history, which Judge Breyer didn't rely upon in reaching his decision. But he said it confirms his reading of the statute, both the 1982 legislative history, the House conference report, and the 1988 Senate report, which added prongs 2 and 3 to the Section 9 plant provision, the second prong having the same language, areas under Federal jurisdiction. Both those reports refer interchangeably to Federal lands and areas under Federal jurisdiction. They treat them synonymously. And then, if need be, I could also reference the administrative practice of Fish and Wildlife Service as indicated in preamble language to listing decisions, the Habitat Conservation Handbook, the Section 7 Consultation Handbook, which also show the agency, perhaps not speaking with the precision that one would like, but certainly consistently over a long period of time, staking out the position that it does not issue incidental take permits under Section 10 for plants, it does not, in conducting a consultation and issuing a biological opinion under Section 7, it might indeed, Your Honor, conclude that the project can't go forward because it would create jeopardy to plants, but the biological opinion will never have a statement in it called an incidental take statement authorizing the take of plants. But under your version of the statute, even if I, okay, so I see the plant. I know it's there. I know it's listed. I apply for a dredge and fill permit from the Department of, from the Corps of Engineers. Corps of Engineers denies it to me because the plant is there. Under your version of the statute, I can go dig it up now because it's my private property. I didn't get a permit, fine, but I can still dig it up. And then I can come back and ask for the permit again. What's wrong with that under your theory of the statute? As a formal and theoretical matter, that is a possible outcome. As a practical matter, that is, has not presented itself as a problem. The agencies have not indicated that that's been a problem. Well, I don't see why it's not under your version of the statute. I mean, it's my private property. Can the State step in? Oh, absolutely. Can the State step in in Judge Fletcher's example? Yes, Your Honor. Under prong 3 of the Section 9 prohibition, which says on all other areas, which we believe means private lands or state-owned lands, the plant cannot be damaged, destroyed, removed, or otherwise negatively impacted if such action is prohibited by State law or by a State criminal trespass law. And in this instance in California, you've got the California Endangered Species Act and the Native Plant Protection Act, which serve as backstops here. Are you arguing, are you telling us, in fact, that in this case, were this plant actually to be found on your client's property, he would be prevented from removing it by State law? You would have to go through certain procedures under State law before it could be removed. Yes, Your Honor. Procedures are? Under the Native Plant Protection Act, if the California Department of Fish and Game identifies the plant on the property and the landowner then has 10 days, or I'm sorry, before the landowner can remove the plant, Fish and Game has 10 days to come to the site and to take the plant and relocate it. I see. So you can get rid of the plant. You can get rid of it. The plant can ultimately be gotten rid of. The worst-case alternative is that the State takes custody of the plant and puts it somewhere else. Yes. From your standpoint, you get rid of the plant. Yes, I can. And you can get rid of the plant even after the permit has been denied to you by the Corps of Engineers. Yes, Your Honor. Let me ask you, just getting back to where we are, where Judge Breyer left us. Yes. You would just like to see us affirm Judge Breyer. Is that correct? Correct, Your Honor. I think a simple affirmance of Judge Breyer would be appropriate. There's no need to get into the Chevron Step 2 question about what the federal government could do if it wanted to ultimately open up a rulemaking on this. No need to reach that, Your Honor. All right. Okay. Any further questions? Thank you. Thank you. I hope we gave you enough time so that you'll be now forgiven to your co-counsel. It's all good. Okay. Why don't we start out with two minutes to respond, and we'll see where we go. Thank you, Your Honor. We don't disagree. Even under our reading of areas under federal jurisdiction, the plant could be removed if you knew it was listed in the Corps. They wouldn't even have to deny that permit. In the regulations that Fish and Wildlife Service has, 50 CFR 17.62, there is a procedure for state agency folks to come in and remove the plant for purposes of protecting it. No doubt about it, they didn't do any of that in the case here. And also, removal is not absolute, which is what Judge Breyer ruled. He said it was almost an absolute prohibition. That's correct. That's simply wrong. It's remove and reduce to possession, and Fish and Wildlife Service, again, has already told us what that means. And they say, quote, the destruction of a plant on an area under federal jurisdiction would not be a violation of Section 9 of the ESA since no taking of possession would have occurred. Removal incident to purposes other than taking of possession is likewise not prescribed. And the example they give is an example of behavior not prohibited would be development activities that physically displace an endangered plant. So there's no absolute prohibition. So the notion that somehow by reading waters of the United States as included in areas under federal jurisdiction would somehow put plants above animals is simply wrong. It is not going to change at all the balance that Congress struck in the Section 9 prohibition. In terms of incidental take permits, the notion that somehow animals have a bigger break because they get an incidental take permit, as counsel acknowledges, incidental take and take don't apply to plants. You don't need any permit to incidentally take a plant. Anyone can waltz onto the private property, and as long as it's not malicious, they can go ahead and incidentally take a listed plant. So the notion that somehow this is putting plants ahead of animals is incorrect. And also contextually, Section 7 is absolutely critical in terms of being consistent throughout the statute. It just makes little statutory sense that Congress would provide for jurisdiction over an area through Section 7 consultation and somehow not want anything to do with it for Section 9, nor is it reasonable to think that Congress intended the example that Your Honor provided where someone could go ahead and just maliciously or otherwise purposely remove a listed species while Section 7 consultation was looming. The legislative history also doesn't make any kind of distinction contrary to the plain language about regulatory or proprietary, and nor do these handbooks and other things warrant any kind of deference from the court. So with that, unless you have any further questions, I appreciate the opportunity. Okay, thank you very much. Good arguments on both sides. Northern California River Watch v. Wilcox, submitted for decision.
judges: Nelson D. W., Fletcher W. , Paez